UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORAN V. PETERSON,

        Plaintiff,

Case No. 1:09-cv-224

Hon. Robert J. Jonker

v.

UNKNOWN COOPER, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion to dismiss and for summary judgment filed by defendants Phil Patterson, Ron Embry and Erica Huss (docket no. 19).

**I.**    **Background**

The court previously summarized plaintiff's allegations in an Opinion allowing partial service:

> Plaintiff Toran Peterson presently is incarcerated at the Ionia Maximum Correctional Facility (ICF). In his *pro se* amended complaint, Plaintiff sues Michigan Department of Corrections (MDOC) Director Patricia Caruso and the following ICF employees: Resident Unit Officers (unknown) Cooper, (unknown) Patterson, and two John Does; Assistant Deputy Warden (unknown) Huss; Warden Willie Smith; Resident Unit Manager (unknown) Embry; and Grievance Coordinator (unknown) Klinesmith.
>
> First, Plaintiff alleges that Defendants Cooper, Patterson, Embry and Huss and the two John Doe Defendants violated his Eighth Amendment rights by engaging in the excessive use of force. (Attach. to Am. Compl. at ¶¶38, 74, docket #10.) On August 22, 2006, Defendants Cooper and Patterson escorted Plaintiff to a Security Classification Committee meeting. At that time, Plaintiff was in hand cuffs and ankle cuffs with a chain that connected the ankle cuffs to the hand cuffs. While returning Plaintiff to his cell, Patterson allegedly told Cooper that he was going to pull Plaintiff's arm out of the foodslot. (*Id.* at ¶21.) At Plaintiff's cell, Defendant

Patterson removed Plaintiff's ankle cuffs. Defendant Patterson then began pulling the hand cuffs and chain through the foodslot until Plaintiff's arms were completely out of the foodslot. Plaintiff's right shoulder popped and Plaintiff screamed. Nevertheless, Defendants Patterson and Cooper continued pulling the chain while Plaintiff screamed in pain. Instead of helping Plaintiff, the two John Doe Defendants ran to Plaintiff's cell and pinned Plaintiff's arms in the foodslot. Defendants Embry and Huss watched the incident but did not intervene. Soon thereafter, the hand cuffs were removed from Plaintiff's wrists. Because of the foodslot incident, Plaintiff experienced sharp pains in his shoulder and his shoulder continuously pops. Plaintiff can no longer exercise and he has trouble sleeping. Plaintiff also suffers from "mental anguish, anxiety, humiliation, shame, embarrassment, sleeplessness and grief." (*Id.* at ¶41.)

Approximately a week later, Plaintiff filed a Step I grievance for the August 22, 2006 incident. (App. 3 to Am. Compl., docket #10.) Plaintiff also requested that the surveillance video be reviewed. Defendant Embry investigated Plaintiff's claims related to the August 22, 2006 incident but failed to address all of Plaintiff's claims. It is unknown from Plaintiff's amended complaint whether Plaintiff received a Step I grievance response. Plaintiff eventually attempted to file a Step II grievance. After several unsuccessful requests to obtain a Step II grievance form from Defendant Klinesmith, Plaintiff filed his grievance directly to Step III. Plaintiff's Step III grievance was rejected because Plaintiff failed to properly submit Step I and II grievances. (App. 4 to Am. Compl.) Because Defendant Klinesmith did not provide Plaintiff with a Step II grievance form, Plaintiff alleges that Defendant Klinesmith violated his First Amendment right to access the courts for redress of his grievance. (Attach. to Am. Compl. at ¶60.)

Third, Plaintiff claims that Defendants Embry, Huss and Klinesmith violated his Eighth Amendment rights for failing to investigate Plaintiff's claims after viewing the surveillance video and implicitly authorizing, approving and acquiescing in the unconstitutional conduct of Defendants Cooper and Patterson and the two John Doe Defendants. (*Id.* at ¶64.)

Fourth, Plaintiff alleges a conspiracy claim against Defendants Embry, Huss and Klinesmith because they supposedly covered up the unconstitutional conduct of Defendants Cooper and Patterson and the two John Doe Defendants. (*Id.*)

Fifth, Plaintiff argues that Defendants Caruso and Smith violated Plaintiff's Eighth Amendment rights by failing to protect him when Caruso and Smith knew of the "widespread pattern" of assaults by staff on prisoners and implicitly authorized such conduct pursuant to a "policy of inaction." (*Id.* at ¶¶67-71.)

Finally, Plaintiff alleges the following state law claims against Defendants Cooper and Patterson and the two John Doe Defendants: assault and battery, gross negligence and intentional infliction of emotional distress. (*Id.* at ¶75.)

Plaintiff seeks injunctive relief and compensatory and punitive damages.

Opinion at pp. 2-4 (docket no. 11).

After initial review of the complaint, the court dismissed most of plaintiff's claims:

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action against Defendants Patricia Caruso, Willie Smith, and (unknown) Klinesmith will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also determines that Plaintiff's claims against (unknown) Huss and (unknown) Embry for failure to investigate and conspiracy will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court, however, will serve the Eighth Amendment excessive use of force claim against Defendants (unknown) Cooper, (unknown) Patterson, (unknown) Huss and (unknown) Embry. The Court will also serve the state law claims against Defendants (unknown) Cooper and (unknown) Patterson.

*Id.* at p. 11.[1]

## II. Motion for Summary Judgment

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

---

[1] Neither Cooper nor the two "John Doe" defendants have been served.

3

Defendants Embry, Huss and Patterson moved for summary judgment on the ground that plaintiff has failed to exhaust his administrative remedies. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.   Failure to exhaust administrative remedies with respect to defendants Embry, Huss and Patterson

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if

4

the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive 03.02.130 (eff. Dec. 19, 2003). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ R. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶ X. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ T (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ X. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance to the Prisoner Affairs Section. *Id.* at ¶ HH.

5

The record reflects that plaintiff filed one grievance regarding the August 22, 2006 incident, identified as Grievance no. ICF 06-09-1381-17I ("1381"). *See* Klinesmith Aff. at ¶ 5 (docket no. 20-4). This grievance named Resident Unit Officer (RUO) Cooper and the "officer who assisted him," who was later identified as RUO Patterson. *Id.*; Grievance 1381 (docket no. 20-5). The grievance did not name Resident Unit Manager (RUM) Embry or Assistant Deputy Warden (ADW) Huss. Ms. Klinesmith[2] stated in her affidavit that the Step I response to Grievance no. 1381 was returned to plaintiff on September 19, 2006. Klinesmith Aff. at ¶ 5. Plaintiff requested a Step II Grievance Appeal Form, which was sent to him on September 21, 2009. *Id.* However, plaintiff did not file the Step II form. *Id.* Plaintiff made a second request for a "step II grievance" on September 21, 2006. Plaintiff's Aff. at ¶ 30 and Exh. 1 (docket no. 24). On September 25th, Ms. Klinesmith advised plaintiff that she had sent the Step II form on September 21st. Plaintiff's Aff. at ¶ 31 and Exh. 1. Plaintiff sent a third request for the Step II form on September 25th, to which Ms. Klinesmith again responded that the form had been sent on September 21st. Plaintiff's Aff. at ¶¶ 32-33 and Exh. 1.

There is no evidence that plaintiff requested a Step II form from any other MDOC employee or filed any document that could be construed as a Step II appeal. Nevertheless, after waiting approximately two months, plaintiff sent a kite dated November 19, 2006, inquiring as to the status of the Step II appeal and advising Ms. Klinesmith that her failure to follow Policy Directive 03.02.130 made her "automatically liable for litigation." Klinesmith Aff. at ¶ 6; Prisoner Kite, Exh. 2-E attached to Klinesmith Aff. Ms. Klinesmith responded that plaintiff had not yet turned in his Step II appeal. Klinesmith Aff. at ¶ 6. One week later, plaintiff sent another kite

---

[2] Ms. Klinesmith was the Step I Grievance Coordinator at the correctional facility.

regarding Grievance 1381, asking why he had not heard about the Step II appeal. Klinesmith Aff. at ¶ 7. Klinesmith again responded that plaintiff had not yet turned in the Step II appeal form that was sent to him on September 21st. *Id.*; Prisoner Kite, Exh. 2-F attached to Klinesmith Aff.

In his affidavit, plaintiff asserted that it was "impossible" for him to appeal to Step III, because the Step III appeal form is on the Step II appeal form. Plaintiff's Aff. at ¶¶ 34-35. Nevertheless, plaintiff filed a Step III appeal on a Step I grievance form, which according to plaintiff, was rejected because it was not on the proper form. *Id.* at ¶ 38 and Exh. 2. In his affidavit, Mr. Stapleton, Administrator of Legal Affairs for the MDOC, stated there is no record of an "appropriately filed" Step III appeal for Grievance 1381. Stapleton Aff. at ¶ 17 and Exh. 1B (grievance inquiry) (docket no. 20-3). Plaintiff's Step III appeal was received by the MDOC's Grievance and Appeals Section on December 4, 2006. *See* Stapleton Aff. at ¶ 18; docket no. 1-4. In a letter dated February 6, 2007, Mr. James Armstrong of the MDOC's Grievances Appeals Section, advised plaintiff that his Step III appeal would not be processed:

> Your attached grievance has been reviewed by the MDOC Office of Legal Affairs. We have determined that it will not be processed further because PD-03.02.130 provides that a prisoner must complete the **Step One and the Step Two grievance process and submit a response for both Steps prior to appealing to Step Three**.

*See* docket no. 1-5 (emphasis in original).

In summary, plaintiff contends (1) that he did not file a Step II appeal because Ms. Klinesmith did not send him a form and (2) that his attempted Step III appeal was rejected because it was on the wrong form. Based on these facts, plaintiff contends that he was prevented from exhausting Grievance 1381 because Ms. Klinesmith refused to send him a Step II appeal form and that he had no further administrative remedies. The court disagrees. A prisoner cannot claim that

7

he exhausted a grievance simply because he did not receive a form. *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001). In order to have a court determine that prison staff prevented a prisoner from exhausting a grievance, the prisoner must show that he made attempts to secure a grievance form, that there was no other source for the form, and that he attempted to file the grievance without a form. *Id. See Martin v. Johnson*, 72 Fed. Appx. 256, 257-58 (6th Cir. 2003) (prisoner does not establish exhaustion by claiming that he requested a grievance form but did not receive it); *Kennedy v. Wurth*, 36 Fed. Appx. 553, 554 (6th Cir. 2002) ("[t]his Court has held that it is inadequate for a prisoner to allege that he was denied a form for a grievance . . . he must show that he attempted to file a grievance without the form").

Plaintiff did not attempt to obtain a form from another MDOC employee or to file a Step II grievance without a form. Rather, plaintiff requested a Step II the form from Ms. Klinesmith, provided no explanation for the whereabouts of the form sent on September 21st, threatened to sue Klinesmith, and then, two months later, kited Klinesmith about the status of the Step II appeal which he never filed. Under these circumstances, plaintiff cannot demonstrate that prison staff prevented him from exhausting Grievance 1381. *See Martin*, 72 Fed. Appx. at 257-58; *Kennedy*, 36 Fed. Appx. at 554; *Jones*, 266 F.3d at 400. Accordingly, defendants Embry, Huss and Patterson are entitled to summary judgment for plaintiff's failure to properly exhaust a grievance against them. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.[3]

---

[3] Furthermore, Grievance 1381 did not name RUM Embry or ADW Huss as required by PD 03.02.130 ¶ T. Even if plaintiff had filed a Step II appeal, Embry and Huss would be entitled to summary judgment. Because plaintiff did not name Embry or Huss in Grievance 1381, the grievance was not properly exhausted as to them. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

## C. The unserved defendants: Cooper and the two "John Does"

The only remaining defendants in this action are the unserved defendants Cooper and the two "John Does" who allegedly assaulted plaintiff on August 22, 2006. Plaintiff has alleged that the three unserved defendants participated in the assault. Defendants Embry, Huss and Patterson have established a meritorious affirmative defense for lack of exhaustion, which is equally applicable to RUO Cooper and the John Doe defendants. Because the only grievance addressing the alleged assault was not properly exhausted, it would be both a futile gesture and an uneconomical use of judicial resources to conduct further proceedings against the remaining three unserved defendants.

"Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) [p]laintiff has been provided an opportunity to address the controlling issues." *Moore v. Thomas*, 653 F.Supp.2d 984, 1003 (N.D. Cal. 2009). "[N]o principle forbids a court to notice that [] a defense exists, is bound to be raised, and is certain to succeed when raised." *Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir.1994). *See Laubach v. Scibana*, No. CIV-05-1294-F, 2008 WL 281545 at *12 (W.D. Okla. Jan. 31, 2008) (meritorious affirmative defenses asserted by defendants were "equally applicable to the claims against the unresponsive and unserved defendants" and formed the basis to dismiss the unserved defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Blake v. McCormick*, No. 5:06-cv-273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007) (a successful affirmative defense of lack of exhaustion raised by defendants served in a prisoner civil rights case "inures to the benefit of any unserved or defaulting defendants"); *Day v. Office of Cook County Sheriff*, No. 2000 C 2529, 2001 WL 561362 at *3 (N.D. Ill. May 21, 2001)

(defendant's meritorious defense of qualified immunity applied to other "yet-unserved defendants" who could raise the same defense). *Cf. Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[s]everal courts have held that where 'a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant'") ( quoting *United States v. Peerless Insurance Company*, 374 F.2d 942, 945 (4th Cir. 1967).

Defendants Embry, Huss and Patterson have established that Grievance 1381 was not properly exhausted. This defense inures to the benefit of the unserved defendants, who allegedly participated in the same incident as Embry, Huss and Patterson. Accordingly, the court should grant summary judgment in favor of the three unserved defendants, Cooper and the two "John Does," for lack of exhaustion.

### III. Plaintiff's state law claims

The remainder of plaintiff's claims against defendants involve violations of Michigan state law. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court initially exercised its supplemental jurisdiction over plaintiff's state law claims because those claims appeared to be intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claim against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against these defendants. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise,

or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the court has rejected plaintiff's federal claims. There is no reason to retain supplemental jurisdiction over plaintiff's state law claims. Accordingly, the court should dismiss the state law claims asserted against defendants.

### IV. Recommendation

I respectfully recommend that defendants' motion for summary judgment (docket no. 19) be **GRANTED** as to defendants Patterson, Embry, Huss, Cooper and the two "John Doe" defendants.

I further recommend that plaintiff's state law claims be **DISMISSED** as to all defendants.

I further recommend that this action be **DISMISSED** in its entirety.


Dated: July 28, 2010 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).